STATE OF IOWA, appellee, v. MILFORD F. RADCLIFFE, defendant; LENA STEIN, surety, appellant.

No. 47739.

(Reported in 44 N.W.2d 646, 47 N.W.2d 175)

NOVEMBER 14, 1950.

SUPPLEMENTAL OPINION (on one point and reinstating former opinion) APRIL 4, 1951.

Ray E. Rieke, of Sioux City, for appellant.

Robert L. Larson, Attorney General, Don Hise, First Assistant Attorney General, and Bernard A. Brown, County Attorney, for appellee.

MULRONEY, J.—When Milford F. Radcliffe was arrested and charged with the false drawing and uttering of a check he appeared on August 8, 1947 and furnished bail bond with Lena Stein as surety and he was released from custody. The bond provided in part as follows:

"WHEREAS, the above named defendant is now under arrest, charged with the offense of false drawing and uttering of a check. Now, if the aforesaid defendant shall appear in the Municipal Court of the City of Sioux City, Woodbury County,

Iowa, on the 11th day of August, 1947, at 2:00 p.m., and abide the order of said court in the premises, then this obligation to be void, otherwise to be and remain in full force and effect.''

On August 11, 1947, Radcliffe appeared in court with his attorney and the record shows he was ''arraigned and plead guilty.'' The court entered judgment that he pay a fine of $50 and in default of the payment of the fine he be committed to the city jail for fifteen days. The judgment and order of the court then provided: ''On showing made, sentence is suspended during good behavior of defendant and he is paroled to his attorney.''

On August 22, 1947, the court made an order which provided that ''upon showing made the suspension herein is set aside and canceled and mittimus is ordered to issue as provided by law.''

On July 26, 1949, the court made the following entry in the case: ''* * * it appears that defendant has failed to abide with order of this court and is found to be in default. Therefore it is ordered that the bond of defendant be and is hereby forfeited. Further it is ordered that the bailiff of this court give the defendant if found and his surety 10 days written notice, as provided by law, to appear and show cause, if any, why judgment should not be entered as provided by law.''

Lena Stein appeared pursuant to the notice and resisted the forfeiture on the ground that her liability on the bail bond ceased on August 11, 1947 when Radcliffe appeared in court and was arraigned and sentenced and the court was thereafter without jurisdiction to forfeit the bond.

On April 19, 1950, the court made the following judgment entry: ''The court finds that the defendant [Radcliffe] has failed to abide with order of this court and that judgment should be entered against defendant and his surety on the bond as provided by law. It is ordered and adjudged that the State of Iowa have judgment against the defendant and his surety, Lena Stein, in the sum of $200, including costs.'' Lena Stein, after receiving proper certificate so to do, now appeals from the above judgment.

I. Section 766.1, Code, 1950 provides: ''If the defendant fails to appear for arraignment, trial, or judgment, or at any

other time when his personal appearance in court is lawfully required, or to surrender himself in execution of the judgment, the court must at once direct an entry of such failure to be made of record, and the undertaking of his bail, or the money deposited instead of bail, is thereupon forfeited."

It is not argued that the defendant failed to appear for arraignment, trial and judgment. The record affirmatively shows he appeared in person and by his attorney. He received the court's sentence of a $50 fine with an order for a jail sentence to coerce its payment. That part of the judgment and order of court which suspended the sentence is void. Dawson v. Sisk, 231 Iowa 1291, 4 N.W.2d 272, 141 A. L. R. 1219; Burnstein ex rel. Burnstein v. Jennings, 231 Iowa 1280, 4 N.W.2d 428. Time and again we have pointed out that an order for commitment which is contingent upon default in the payment of a fine is not a sentence of imprisonment within the meaning of the parole statutes. Many of our decisions in which such pronouncements were made are cited in Dawson v. Sisk, supra. That part of the court's order providing for imprisonment upon nonpayment of the fine could be enforced at any time. In Dawson v. Sisk, supra, we considered the two lines of authority: one holding that after an unauthorized suspension of sentence the court would be without jurisdiction to issue a mittimus after the term or the imprisonment period expired, and the other holding that mittimus could issue at any time to enforce the valid part of the sentence. We chose to follow the rule that mittimus could issue at any time after an unauthorized suspension of sentence and we adopted this rule, which is quoted from Judge Sanborn's opinion in Morgan v. Adams, 8 Cir., Kan., 226 F. 719, 721:

"If the order suspending such a sentence is illegal, it is so not because it is irregular or technically defective, but because it is beyond the power of the court, and it is therefore void, and the sentence stands, and is enforceable by the court at any time after its rendition, either before or after the term of the court, until the convict has suffered the penalties it imposes. Even if the order of suspension is embodied in the judgment which imposes the sentence, nevertheless the sentence is authorized and valid, while the order of suspension is unauthorized and void,

and, as the latter is separable from the former, the latter falls, while the sentence stands."

II. The only issue in this case that was raised by the resistance is whether appellant's liability ceased on August 11, 1947 when the defendant was arraigned and pleaded guilty and was sentenced. We will treat the sentence as a fifty-dollar fine and imprisonment for omission to pay. All else in the sentence and judgment was void. So the question is whether under the conditions of the bond and under the provisions of the forfeiture statute the court would have jurisdiction to forfeit this bond after August 11, 1947 if the defendant failed to pay the fine or surrender himself in execution of the imprisonment portion of the judgment if the fine remained unpaid.

There is authority that a bail bondsman's liability ends with the sentencing of his principal, then present in court. And there is authority that such liability does not end until the defendant surrenders himself after the sentence in execution of the penalty imposed. But, as we pointed out in State v. Brown, 16 Iowa 314, there is no conflict in the two lines of authorities. If the extent of the obligation of the bond, or the statutes involved, is that the accused shall appear and answer the charge against him, then the cases usually hold that the sentence works an implied change of custody from the bail to the law and the bondsman is thereafter exonerated. But if the obligation of the bond, or the statutes involved, is that the accused shall not only appear but also that he will abide the orders of court or surrender himself in execution of such order then the bondsmen are not exonerated at the time of sentence.

■ The following quotations from 8 C. J. S., Bail, section 79g, announce the general rules under the above stated bond conditions:

"Where the bond is so conditioned as only to require the sureties to have their principal in court until his case is finally determined, liability on the bond is terminated when sentence is imposed. * * *

"Sureties on a bond conditioned that the principal shall abide the judgment of the court, or that he will appear for judgment and render himself in execution thereof, are not dis-

charged by a conviction and pronouncement of sentence, and the principal must further submit to such punishment as shall be adjudged."

See also 20 A. L. R. 629.

In State v. Brown, supra, 16 Iowa, at page 316, we said:

"Under our statute, Rev., §4968, the conditions of the bond are, not only that the accused shall appear at the place of trial, and answer the charge against him, but also, that he shall abide the orders and judgment of the court, and not depart without leave. * * * A man's bail are the jailers of his own choosing, and they are bound to have him as much in the power of the court, as he would be if in custody of the proper officer."

In this case too we pointed out (page 317) that "under our statute the undertaking of bail is a continuing one, from which the obligors may be discharged by the surrender of the accused, as provided by statute, or by obtaining leave of court for the accused to depart."

Again, in State v. Zimmerman, 112 Iowa 5, 6, 83 N.W. 720, we said the undertaking of bail "is a continuing one, and can only be discharged by the surrender of the accused as provided by statute * * * or by obtaining leave of court for the accused to depart."

Here the bond was conditioned that the principal "abide the order of court." It did not contain the clause that he would surrender himself in execution of the judgment, but there is little or no difference when the order he is obligated to abide orders a conditional imprisonment of his person. Besides, the statute (section 766.1, supra) supplies the omission in the bond by prescribing a mandatory forfeiture of a bail bond whenever the defendant fails "to surrender himself in execution of the judgment." Our statutes do not prescribe the exact form of a bail bond. One is suggested in section 763.8, Code, 1950 where the statute provides the bail bond "may be substantially in the following form:" and there follows a form containing the obligation that principal will "submit to the orders and judgment of said court." But the bail bond is nevertheless a statutory bond and its obligations will be measured by the forfeiture statute, or section 766.1, supra. The suggested form in section 763.8,

supra, containing the "submit to" obligation and the "surrender" clause in section 766.1, supra, must be read together. The presence of the surrender clause in the forfeiture statute is a legislative interpretation that the obligation to "submit to the orders and judgment" found in the form statute includes the obligation "to surrender himself in execution of the judgment." And the obligation "to abide" used in the present bond is even stronger than the obligation to submit to the judgment.

Appellant cites no cases where under similar facts the bondsmen were exonerated where the bail bond was conditioned that the principal abide or surrender. State v. Holmes, 23 Iowa 458, State v. Orsler, 48 Iowa 343, and State v. Zimmerman, 112 Iowa 5, 83 N.W. 720, cited by appellant, were all cases where the principal in some manner obtained his liberty after sentence and after he was in the custody of the offiteers. Suit v. State, 212 Ark. 584, 207 S.W.2d 315, also cited by appellant, announces the rule that liability of the bondsmen ends with the sentence— apparently the general rule when the bail bond does not contain an abide or a surrender clause. But the above opinion quotes neither the bond nor the statutes of Arkansas.

III. It is no answer here that the defendant was allowed to depart after sentence and a mittimus was not immediately entered or executed. As pointed out, that part of the order was void.

In Miller v. Evans, 115 Iowa 101, 104, 88 N.W. 198, 199, 56 L. R. A. 101, 91 Am. St. Rep. 143, where the sheriff neglected to execute a mittimus for a jail sentence for an unpaid fine until several months after the defendant had been sentenced in court, we said: "The time for its execution was not of the essence of the judgment, unless the prisoner, by demanding that it be immediately carried out, made it such. It was his duty to surrender himself and submit to the penalty of the law, as well as that of the sheriff to inflict it * * *."

In State v. Kraner, 50 Iowa 582, 583, the facts were that one Hillier was out on bail conditioned that he appear at the next term of court and "not depart without leave of the court, and obey all orders of said court made in said case." He appeared, pleaded guilty, was fined $50 and committed to jail, as provided by statute if the fine was not paid. At the next term

of court the fine was still unpaid and Hillier failed to appear and the bond was declared forfeited. At the time and for a long time afterward Hillier could have been arrested and the bondsman presented the sheriff with a certified copy of the bond and requested in writing that the sheriff arrest him in execution of the sentence. We held the bail was not exonerated.

In State v. Stewart, 74 Iowa 336, 341, 37 N.W. 400, 402, where a bail bond was forfeited on the ground that the defendant failed "to surrender himself in satisfaction of the judgment" the bondsman offered to prove that the commitment had issued during the term his principal was convicted and while he was present but the district attorney had ordered the sheriff to hold it up until after the next meeting of the board of supervisors and the sheriff followed these instructions. We held such proof would be of no avail for "the district attorney would have no authority to suspend proceedings under the judgment." We pointed out the bond was in statutory form conditioned that Stewart would "abide the judgment of the court" and said:

"We do not think the conditions of the bond were fulfilled by the attendance of the principal at the term of court to which it especially referred. It was the duty of the obligors to have their principal at all times ready to answer to the judgment of the court, until they had surrendered him as provided by law, or until the fine was satisfied."

In Malley v. State, 125 Tex. Cr. 625, 628, 69 S.W.2d 765, 766, an erroneous verdict was returned by the jury and the court set it aside and dismissed the prosecution. It was held the court had jurisdiction to set the erroneous verdict aside but no jurisdiction to dismiss the prosecution and with reference to the bail the court stated: "The trial court not having legal authority upon its own motion to dismiss the case and discharge the defendant, the appellants [bondsmen] were not by the order of dismissal released from the bond."

In State v. Helgerson, 59 S. D. 516, 517, 518, 241 N.W. 325, 326, the judgment entry of November 23, 1929 provided that " 'commitment to be stayed until December 14th, 1929, at 9 A. M.' ". The defendant not appearing in December, the State

sought forfeiture of his bail bond. The trial court held for the bondsman and, in reversing, the supreme court stated:

"After sentence, without express order to the contrary, there is an implied legal change of custody from the bail to the law, especially where the bond contains no condition requiring the defendant to abide the final judgment or, if convicted, to render himself in execution of the judgment. * * * But here the bond contained the condition that the principal therein should 'render himself in execution of the judgment.' "

The court went on to hold that under such a bond the State was clearly entitled to forfeiture. See also La Grotta v. United States, 8 Cir., Neb., 77 F.2d 673.

The original judgment being valid and the suspension void the defendant should have paid the fine or he should have been imprisoned for default in payment of the fine. The fine was not paid. The obligation of the bond was that he would abide by the court's order and, as we have seen, that meant that he would surrender himself in execution of the unpaid fine. This he did not do before the forfeiture entry so the bail was correctly held forfeited. As was held in Miller v. Evans, supra, the defendant would not be allowed to profit when officers refuse to do their duty and delay the imprisonment. So too his bondsman will not be allowed to profit by a void order of suspension of sentence. We held in the last cited case (page 104 of 115 Iowa) that the defendant's duty to surrender in execution of the judgment continues after he acquiesces in the officer's delay; that "the time at which the sentence is to be carried out is ordinarily directory only." Upon the same reasoning we hold the duty to surrender in execution of the judgment continues after he acquiesces in a void order of suspension of sentence. This duty which was an obligation of the bail bond was breached. The bond was correctly forfeited. The judgment appealed from is affirmed.—Affirmed.

All JUSTICES concur except HALE, J., not sitting.

### OPINION ON REHEARING

MULRONEY, J.—We granted rehearing in this case to allow the parties to argue the application of section 766.4, Code, 1950.

That section provides: "Where forfeiture is entered before a justice of the peace, or a court of limited jurisdiction * * * such court * * * shall within ten days file the same, with a copy of all official entries in relation thereto, in the office of the clerk of the district court of the county * * *." The section goes on to provide for judgment on the forfeiture in the district court. The specific question, which was not argued in the original briefs, is whether the municipal court of Sioux City, which entered the judgment in this case, is "a court of limited jurisdiction" within the purview of the above statute.

▇▇ There is no clear line dividing courts of general and limited jurisdiction. In a sense all courts are circumscribed by boundaries of jurisdiction in that there are circumstances under which their jurisdiction will and will not attach. The Georgia Supreme Court in an early case (Tucker v. Harris, 13 Ga. 1, 7, 58 Am. Dec. 488, 491) observed:

"The line of demarcation between courts of general and limited jurisdiction is not so definite however, as is generally supposed. It is usual to state what particular courts fall within the one class, and what within the other. But what author has undertaken to mark with accuracy and precision the boundary between the two? Bacon has not, nor has Blackstone, nor any other elementary writer."

▇▇ The question of whether a court is of general or limited jurisdiction usually arises in attacks on judgments. Broadly stated the judgment of a court of general jurisdiction need not set forth the jurisdictional facts upon which it is rendered while judgments of courts of limited jurisdiction must show jurisdictional requisites.* Whether a court is of general or limited jurisdiction depends on the nature of the jurisdiction conferred and it does not depend on territorial limitations or an amount in controversy range within which that jurisdiction is to be exercised. 21 C. J. S., Courts, section 2; Colagiovanni v. District Court, 47 R. I. 323, 133 A. 1.

▇▇ The district courts of this state are by statute made courts of general jurisdiction. Section 604.1, Code, 1950. Mu-

*This distinction is abrogated in this state by section 622.56, Code, 1950, giving a presumption of regularity to proceedings of courts of "limited and inferior jurisdiction." See In re Appeal of Head, 141 Iowa 651, 118 N.W. 884.

nicipal courts are given "concurrent jurisdiction with the district court in all civil matters where the amount in controversy does not exceed one thousand dollars" except in certain specified cases. Section 602.14, Code, 1950. And in section 602.15, Code, 1950, it is provided that "in all criminal matters the [municipal] court shall exercise the jurisdiction conferred on the district court for the prosecution of misdemeanors * * *."

These statutes make it abundantly clear that the *nature* of the jurisdiction conferred is that of the district court or a court of general jurisdiction. It is not necessary that jurisdiction be exclusive in order to be general. Pursley v. Hayes, 22 Iowa 11, 34, 92 Am. Dec. 350, 368. If it be thought a bail-bond forfeiture is a criminal matter as pertaining to a pending criminal case, it is within the broad grant of jurisdiction of section 602.15, giving the municipal court the district court's general jurisdiction "in all criminal matters" involving misdemeanors.

In the following cases municipal courts have been held to be courts of general jurisdiction: Enosburg Grain Co. v. Wilder, 112 Vt. 11, 20 A.2d 473; Town of Brighton v. Town of Charleston, 114 Vt. 316, 44 A.2d 628; McDevitt v. Connell, 71 N. J. Eq. 119, 63 A. 504.

It is our conclusion that the municipal court of Sioux City was exercising general jurisdiction in entering the judgment on the forfeiture and section 766.4, Code, 1950 has no application. With this addition our former opinion is reinstated.

All JUSTICES concur except MANTZ, J., not sitting.